# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NANCY RINEHART**, individually and on behalf of all others similarly situated, | CASE NO. 3:16-CV-05128-MAS-LHG |
| *Plaintiff,* | |
| *v.* | |
| **AS AMERICA, INC.** d/b/a American Standard, a Delaware corporation and **SAFETY TUBS COMPANY, LLC**, a Delaware limited liability company, | |
| *Defendants.* | |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
# <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

I.    INTRODUCTION ...................................................................1

II.   LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND ...............3

      A.    The TCPA and its Implementing Regulations. ...................3

      B.    Plaintiff's Allegations and Proposed Class Counsel's Investigation of the Claims. ..........................................5

      C.    Litigation, Early Settlement Discussions, and Mediation. ..............6

III.  TERMS OF THE SETTLEMENT ..................................................8

      A.    Class Definition...................................................8

      B.    Monetary Relief. ..................................................8

      C.    Prospective Relief. ................................................9

      D.    Release of Liability. ...............................................9

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.......................................................10

      A.    The Numerosity Requirement is Satisfied. ....................11

      B.    The Commonality Requirement is Satisfied....................12

      C.    The Typicality Requirement is Also Met. .....................13

      D.    Plaintiff and Class Counsel Will Adequately Represent the Settlement Class Members. .............................14

      E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b). ..................................................16

1.    Defendants have acted on grounds substantially similar to all Settlement Class Members. ................................................17

2.    Common Issues of Law and Fact Predominate. ..................17

3.    The Class Mechanism is a Superior Method of Adjudication. ........................................................................18

F.    Plaintiff's Counsel Should be Appointed as Class Counsel. .........20

V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL. ......................................................................21

A.    The Settlement Agreement is the Result of Engaged, Arm's Length Negotiations Overseen By An Experienced Mediator. .....22

B.    The Settlement Agreement is a Preferable Alternative to the Risks Through Continued Litigation. .........................................24

C.    The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class. ..................24

D.    The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval. ......................................................................25

VI.    NOTICE TO THE CLASS SHOULD ALSO BE APPROVED .............28

VII.    CONCLUSION ........................................................................31

iii

# TABLE OF AUTHORITIES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....................................*passim*

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............10, 12, 14

*Bernhard v. TD Bank, N.A.*, 2009 WL 3233541 (D.N.J. Oct. 5, 2009)...................21

*Charron v. Pinnacle Group N.Y. LLC*, 874 F.Supp.2d 179 (S.D.N.Y. 2012).........29

*Dartell v. Tibet Pharmaceuticals, Inc.*, 2017 WL 2815073
    (D.N.J. June 29, 2017)........................................................................28

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, (3d Cir. 2010)...................................21

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) ...............4

*Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011)..............................11, 17

*Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996) ...........................18

*Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598 (9th Cir. 2011)....................4

*Hall v. AT & T Mobility LLC*, 2010 WL 4053547 (D.N.J. Oct. 13, 2010)..............25

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988)..................................................11, 15

*In re AremisSoft Corp. Securities Litigation*, 201 F.R.D. 109 (D.N.J. 2002) .........31

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781
    (N.D. Ill. 2015) ....................................................................................27

*In re Flonase Antitrust Litigation*, 291 F.R.D. 93 (E.D. Pa. 2013) ...................22, 30

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008).................17

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) ..............30

*In re Prudential Ins. Co. of America Sales Practices Litigation*,
    962 F.Supp. 450 (D.N.J. 1997) ..........................................................19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................................10

*In re SmithKline Beckman Corp. Securities Litigation*,
751 F.Supp. 525 (E.D. Pa. 1990) .......................................................27

*In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363
(E.D. Pa. Sept. 10, 2009) ....................................................................28

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ..........................16

*Kallow & Springut, LLP v. Commence Corp.*,
272 F.R.D. 397 (D.N.J. 2011) .....................................................17, 18

*Mazon v. Wells Fargo Bank, N.A.*,
2011 WL 6257149 (D.N.J. Dec. 14, 2011) .........................................21

*Milliron v. T- Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 10, 2009) ........30

*Mims v. Arrow Financial Servs.*, LLC, 132 S. Ct. 740 (2012) ...................................4

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................................30

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............27

*Rudel Corporation v. Heartland Payment Systems, Inc.*, 2017 WL 4422416
(D.N.J. Oct. 4, 2017) ..........................................................................22

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).........................4

*Smith v. Dominion Bridge Corp.*, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007).....28

*Smith v. Professional Billing & Management Services, Inc.*,
2007 WL 4191749 (D.N.J. Nov. 21, 2007)........................................21

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)..................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011)......12, 17, 29

## STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*..........................*passim*

Fed. R. Civ. P. 23 ...........................................................................................*passim*

*Manual for Complex Litig.*, (2d ed. 1985) ................................................................22

*Manual for Complex Litig.*, (4th ed. 2004) .......................................................10, 25

Plaintiff Nancy Rinehart ("Plaintiff" or "Rinehart"), having reached a class action settlement agreement ("Settlement Agreement" or "Agreement") with Defendants AS America, Inc. d/b/a American Standard and Safety Tubs Company, LLC (collectively the "Defendants"), respectfully moves this Court, in accordance with Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the Class Action Settlement (the "Settlement") in this matter, (2) certifying the proposed Settlement Class for settlement purposes, (3) approving the form and content of the Notice to be sent to the members of the Settlement Class pursuant to the plan detailed in the Settlement Agreement, (4) appointing proposed Class Counsel and the Class Representative to represent the Settlement Class, and (5) scheduling a final fairness hearing.

## I.     INTRODUCTION

The Parties have reached a Settlement Agreement in this case challenging Defendants' telemarketing activities—specifically, autodialed calls Defendants placed that advertised their walk-in bathtubs—under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and its implementing regulations, 47 C.F.R. § 64.1200 *et seq.* (the "TCPA" or the "Act"). Plaintiff alleged that Defendants violated the TCPA in two key ways: (1) first, by using an autodialer to place calls to cellular telephones *en masse* without prior express consent[1], and (2) second, by

---

[1] As explained below, informal discovery exchanged between the Parties identified

repeatedly calling telephone numbers registered on the National Do Not Call Registry.

Shortly following the commencement of the lawsuit, the Parties engaged in early discussions regarding the information needed to explore a potential resolution. Through these informal talks, Defendants identified the source of the leads at issue in this case and, following additional talks, the Parties agreed to engage in a formal mediation. To that end counsel for Plaintiff and Defendants participated in a two-day mediation session with the Hon. John J. Hughes, U.S.M.J. (ret.) of JAMS in Philadelphia, a well-respected, nationally recognized neutral. The mediation resulted in a settlement in principal that provides impressive relief to the Settlement Class, and the Parties thereafter worked to finalize all settlement documents and materials and to identify the Settlement Class Members.[2] As a result of these efforts, Plaintiff now moves the Court for an Order granting preliminary approval to the Parties' Settlement Agreement. (*See* "Settlement Agreement" or "Agreement," attached hereto as Exhibit A).

The Agreement calls for the creation of a common fund totaling $600,000

---

a website, www.contractorlink.net, that Defendants used to obtain Plaintiff's and the Classes' phone numbers. Plaintiff claimed that the consent language on the website failed to comport with the requirements of 47 C.F.R. § 64.1200 *et seq*.

[2] Due to certain data issues, explained below, the process of identifying Settlement Class Members required extensive time and effort by and between the Parties and the proposed Settlement Administrator.

(the "Settlement Fund") and gives the proposed Settlement Class Members an option to choose between two lucrative options: $1,000 cash or $2,000 in credit towards any of Defendant Safety Tubs' walk-in bathtub products. (*Id.* ¶¶ 1.36, 2.1.) In exchange, Defendants receive a release of the telemarketing claims that were or could have been brought in the case. (*Id.* ¶ 3.) Finally, the Agreement provides Class Members with Notice of their rights to request to be excluded and object to the Settlement Agreement and sets forth procedures for filing claims through the use of a simple Claim Form (attached hereto as Exhibit B).

The tremendous results achieved by the Settlement Agreement—which far exceeds on a per-claim basis settlements that have received final approval by courts in this and other districts—are well beyond those required for preliminary approval. Plaintiff thus moves the Court to preliminarily approve the Agreement, certify the proposed Settlement Class, appoint Plaintiff Nancy Rinehart as the Settlement Class Representative ("Class Representative"), appoint Steven Woodrow, Patrick Peluso, and Stefan Coleman as Settlement Class Counsel ("Class Counsel"), and order that notice be disseminated in accordance with the Agreement.

## II.   LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### A.   The TCPA and its Implementing Regulations.

A brief summary of the law that forms the basis of Plaintiff's claims helps

put the Settlement Agreement in its proper context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology . . . ." *Mims v. Arrow Financial Servs.*, LLC, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S. Ct. at 745.

To prevail on a claim under the TCPA, a plaintiff must show that a person: (1) made a telephone call; (2) using an Automatic Telephone Dialing System ("ATDS"); (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiff and other Class Members provided their prior express consent to receive such telephone calls is an affirmative defense. *See, e.g., Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598, 600 n.1. (9th Cir. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (recognizing that it is a defendant's burden to show prior express consent was obtained as an affirmative defense).

The TCPA also prohibits multiple unsolicited calls made to phone numbers that have been registered on the national Do Not Call registry, a list maintained by the federal government. *See* 47 U.S.C. § 227(c). Consumers who register their

4

phone numbers are entitled to heightened protections, including a cause of action whenever they receive more than one call during any 12-month period where their phone number had been on the registry for at least 30 days. *See* 47 U.S.C. § 227(c)(5).

The TCPA sets statutory damages of $500 per violation and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B). Such damages may be trebled where willfulness is shown. *See* 47 U.S.C. § 227(b)(3)(C).

**B.  Plaintiff's Allegations and Proposed Class Counsel's Investigation of the Claims.**

The case begins with the national Do Not Call registry. That is, on August 27, 2005, Plaintiff Rinehart registered her cellular phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls. (Compl. at 22.) Notwithstanding the fact that her number had been on the Do Not Call registry for over a decade, beginning on June 23, 2016, Plaintiff Rinehart began receiving unsolicited telemarketing calls from Defendants. (*Id.* at 23.)

Defendants have harassed Plaintiff. That is, Plaintiff has received multiple calls from Defendants on a daily basis attempting to market and sell their Safety Tubs walk-in bathtubs. (*Id.* at 24-25.) In making the calls at issue, Plaintiff claims Defendants used an automatic telephone dialing system ("ATDS"). (*Id.* at 23.) Plaintiff claims she never provided her prior express written consent to be called.

(*Id.* at 27.)

Given the persistence of the calls, Plaintiff sought out legal assistance by contacting the Law Offices of Stefan Coleman, P.A. (Declaration of Patrick H. Peluso, "Peluso Decl.", attached hereto as Exhibit C, ¶ 3.) Upon being contacted by Rinehart, attorney Coleman's office promptly thoroughly commenced a thorough investigation into her allegations and claims, including a review of Defendants' websites, the history of public information regarding complaints about Defendants' calling practices, and the phone calls placed to Plaintiff. (*Id.* ¶ 4.) Thereafter, Stefan Coleman contacted Steven L. Woodrow and Patrick H. Peluso, experienced TCPA counsel, in an effort to work together to prosecute this action. (*Id.* ¶ 5.)

Counsel thereafter worked together to draft Rinehart's class action complaint, which was ultimately filed on August 23, 2016 (3:16-cv-05128-MAS-LHG). (*Id.* ¶ 7.) (Dkt. 1.)

## C.    Litigation, Early Settlement Discussions, and Mediation.

Defendants answered November 3, 2016. (Dkt. 9.) Counsel for the Parties thereafter began discussions regarding the merits of the case. These frank talks helped facilitate an exchange of information relevant to the key issues in the case, including the manner by which Defendants claimed they obtained prior express consent. As a result of this back and forth, counsel for the Parties agreed to engage

6

in private mediation in an effort to resolve the dispute. (Peluso Decl. ¶¶ 8-10.)

As stated above, prior to the mediation the parties exchanged informal discovery. This included information identifying the approximate number of unique telephone numbers that had been called for the same purpose (and using the same equipment) as Plaintiff and the total number of calls placed to each cellphone user. And as set forth above, it also included the manner in which Defendants' claimed to have procured Plaintiff's phone number and consent to call (i.e., the contractorlink.net website). (*Id.* ¶ 9.) Proposed Class Counsel used this information to estimate the size of the proposed classes and to calculate the extent of Defendants' liability, exposure, and ability to settle. (*Id.*)

Counsel for the Parties agreed to mediate with the Honorable John J. Hughes (ret.) of JAMS in Philadelphia, a respected third party neutral with substantial class action experience. On June 12, 2017, counsel for the Parties convened at JAMS's offices in Philadelphia to begin the process. (*Id.* ¶ 11.) Following two full days of arm's-length negotiations, the Parties emerged from the mediation with a framework for settlement. (*Id.* ¶ 12.) Only after the Parties reached an agreement with respect to the relief to be provide to the Settlement Class members did the Parties negotiate an incentive award for the Class Representative and an award of reasonable attorneys' fees for Class Counsel. (*Id.* ¶ 13.)

Hence, the instant Settlement is the result of substantial and meaningful

efforts expended by counsel for all Parties. As explained below, the terms of the

Settlement Agreement stack up well when compared to other TCPA settlements—

indeed, the results here are by any measure exceptionally favorable for the

Settlement Class. As such, and as set forth below, the Court should grant

preliminary approval. A summary of the Settlement's key terms follows.

## III.   TERMS OF THE SETTLEMENT

The central terms of the settlement are as follows:

### A.   Class Definition.

The "Settlement Class" is defined as: all persons in the United States who

(1) from a date four years prior to the filing of this Complaint until the date notice

is disseminated to the Class, (2) were called by Defendants (or any third-party

acting on behalf of Defendants), (3) on the persons' cellular telephones, (4) for the

purpose of selling Defendants' products or services, and (5) had their lead

information obtained by Defendants via the contractorlink.net website. (Settlement

Agreement ¶ 1.7.)

### B.   Monetary Relief.

The Settlement provides Class Members who file claims a choice of the type

of relief they desire. Specifically, Defendants have agreed to provide to each Class

Member who files a claim either a cash payment in the amount of $1,000 or a

certificate for $2,000 worth of Safety Tubs's products—Settlement Class Members

need only select a box indicating which type of relief they prefer. (*See* Exhibit B.) Defendants' obligation is capped at $600,000.00 total ("Settlement Fund"). (*Id.* ¶ 2.1.) That is, if the total amount required to pay each approved claim would exceed the amount in the Settlement Fund after payment of settlement administration expenses, the court-approved incentive award to Nancy Rinehart for her service as the Class Representative, and any reasonable attorneys' fees awarded to proposed Class Counsel, then each Settlement Class Member with an approved claim will receive a *pro rata* share of the amount of the settlement fund remaining after payment of such amounts. (*Id.*)

### C.    Prospective Relief.

Defendants further agree that they shall affirmatively use commercially reasonable efforts to, on or before the Effective Date and continuing for a period of eighteen (18) months from the Effective Date, procure express written consent from each person they intend to place promotional telephone calls to using an ATDS using language that tracks the TCPA's implementing Regulations. (*Id.* ¶ 2.2.)

### D.    Release of Liability.

In exchange for the relief described above, Defendants and their related and affiliated entities will receive a full release of any claims relating to telephone calls placed to Class Members whose lead information was procured via the

contractorlink.net website. (*Id.* ¶ 3.1-3.4.)

As explained below, such terms are demonstrably favorable to the Class, and the Court should grant preliminary approval to the instant Agreement.

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

Before preliminary approval of a class action settlement can be granted, a court must determine that the proposed settlement class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litig.*, § 21.632 (4th ed. 2004). Federal Rule of Civil Procedure 23(a) provides that a class may be certified where: (i) the class is so numerous that joinder of all members is impractical; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representatives parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir. 1998).

Once the requirements of Rule 23(a) have been established, "a putative class must also comply with one of the parts of subsection (b)." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 55-56 (3d Cir. 1994). In this case, Plaintiff seeks certification of the Settlement Class under both Rule 23(b)(2) and Rule 23(b)(3). "Rule 23(b)(2) applies when 'the party opposing the class has acted or refused to

act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(3), meanwhile, requires that: (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615; *see also Hassine v. Jeffes*, 846 F.2d 169, 177 n.4 (3d Cir. 1988).

As explained below, the proposed Settlement Class meets the requirements of Rules 23(a), 23(b)(2), and 23(b)(3) and, consequently, certification for settlement purposes is appropriate here.

## A.   The Numerosity Requirement is Satisfied.

The first prerequisite to class certification under Rule 23 is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, the proposed Class is comprised of 385 class members that are all

recipients of Defendants' autodialed sales calls after Defendants obtained their number via the contractorlink.net website. (Settlement Agreement ¶ 1.10.) Joining 385 separate plaintiffs would plainly be impracticable. Thus, the Class here is ascertainable and numerous, as 385 persons well exceeds the 40-member benchmark to establish numerosity.

### B.      The Commonality Requirement is Satisfied.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364 (1982)). Stated differently, commonality requires that the "named plaintiff share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter*, 43 F.3d at 56. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted." *Id.* (citations omitted).

In this case, the members of the Settlement Class share several common questions of law and fact, including:

12

(1)     whether Defendants obtained prior express written consent to call the Settlement Class Members as required by the TCPA;

(2)     whether Defendants utilized an ATDS to make the calls;

(3)     whether Defendants systematically made telephone calls to consumers whose numbers were registered with the National Do Not Call Registry;

(4)     whether the calls were made for telemarketing purposes; and

(5)     whether Defendants acted willfully.

These common questions are susceptible to common answers through common proof. That is, if the method Defendants assert that they used to obtain prior express consent was insufficient with respect to Plaintiff Reinhart, then that method of consent would be deficient and in violation of the TCPA with respect to all of the other Settlement Class Members. The fact that Defendants procured each member of the Settlement Class's contact information from the same website (contractorlink.net) shows that the claims of all class members succeed or fail on the same grounds—whether the consent language on the contractorlink.net website complied with the TCPA.

In short, there are multiple questions of law and fact common to the Settlement Class Members, and the commonality requirement is satisfied.

## C.     The Typicality Requirement is Also Met.

Rule 23 next requires that the class representative's claims be typical of

those of the putative class she seeks to represent. Fed. R. Civ. P. 23(a)(3). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal for and by Kanter*, 43 F.3d at 57. "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Id.* at 57-58 (citing *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)).

As explained above, the legal theories and factual bases for the Plaintiff's and the Proposed Class Members' claims are essentially identical. In short, each member of the Class received a telemarketing call from Defendants in a bid to sell walk-in bathtub products. Additionally, Defendants procured the contact information for all members of the class from the same website and, likewise, they claim to have procured consent from each member in an identical manner. Accordingly, Plaintiff's claims and the claims of the other Settlement Class Members arise out of the same conduct. Plaintiff is a member of the Settlement Class, and her claims are sufficiently typical of the other Settlement Class Members.

**D.     Plaintiff and Class Counsel Will Adequately Represent the Settlement Class Members.**

14

Lastly, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem*, 521 U.S. at 625 (finding that the purpose of the adequacy requirement is "to uncover conflicts of interest between named parties and the class they seek to represent"). "The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988).

In this case, Plaintiff has the same interests as the proposed Settlement Class—obtaining monetary and injunctive relief from Defendants for the making of allegedly unlawful telemarketing calls to consumers cellphones without the necessary prior express written consent. Like the other members of the Settlement Class, Plaintiff received unwanted telephone calls from the Defendants without providing prior express consent. Further, Plaintiff has stepped forward to protect the interests of the Settlement Class and doesn't have any actual conflicts of interest. Indeed, Plaintiff is unaware of any interest that she has that may be antagonistic to the interests of the proposed Settlement Class Members, and Plaintiff's pursuit of this action confirms as much.

Likewise, proposed Class Counsel, lawyers at the law firms of Woodrow & Peluso, LLC and the Law Offices of Stefan Coleman, P.A., are well-respected members of the legal community with extensive experience in class actions of similar size, scope, and complexity to the instant action. (Peluso Decl. ¶ 6.) They have regularly engaged in major complex litigation involving violations of the TCPA, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts in TCPA settlements and other cases throughout the country. (*See* Firm Resume of Woodrow & Peluso, LLC, a true and accurate copy of which is attached to the Peluso Declaration as Exhibit 1; *see also* Firm Resume of the Law Offices of Stefan Coleman, P.A., a true and accurate copy of which is attached as Exhibit 2 to the Peluso Declaration.) Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Peluso Decl. ¶ 16.)

Accordingly, Plaintiff and her Counsel have and will continue to adequately represent the interests of the Settlement Class.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b).

Upon satisfying Rule 23(a)'s prerequisites, a plaintiff must also demonstrate that the proposed class satisfies one of the three subsections of Rule 23(b). *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001). Here,

Plaintiff seeks to certify the proposed Settlement Class under both Rule 23(b)(2) and Rule 23(b)(3). As explained below, the proposed Settlement Class meets both requirements.

### 1. Defendants have acted on grounds substantially similar to all Settlement Class Members.

As stated above, "Rule 23(b)(2) applies when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). For the injunctive claims, Defendants have treated all members of the class in an identical manner. In short, Defendants procured all members' contact information and consent to call via the same website. Likewise, Defendants failed to obtain the necessary prior express written consent to call members on their cellular telephones. As such, Defendants have acted or refused to act on grounds generally applicable to the class, rendering Rule 23(b)(2) certification appropriate.

### 2. Common Issues of Law and Fact Predominate.

With respect to Rule 23(b)(3), the inquiry into whether common questions predominate is generally focused on whether there are common liability issues that may be resolved efficiently on a class basis. *Amchem*, 521 U.S. at 623; *Dukes*, 564 U.S. at 349-60. Common issues predominate if the class can prove the essential

17

elements of the claim "through evidence that is common to the class." *Kallow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 406 (D.N.J. 2011); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008). In addition, courts find that "common issues predominate when the focus is on the defendant's conduct" rather than on the conduct of the class. *Kallow*, 272 F.R.D. at 406.

Common issues of law and fact predominate here. While its not required, each Settlement Class Member's claim is essentially identical. At a risk of sounding repetitive, Plaintiff's and the Class Members' contact information and consent to call were ostensibly procured from a single website (contractorlink.net). Defendants thus procured consent in the exact same manner for all class members. Whether that consent was sufficient will be proved by common evidence. Likewise whether the calls were made with an ATDS and whether the calls were for the purpose of selling Defendants' products and services will also be demonstrated through the same evidence. As such, the common questions resulting from Defendants' alleged misconduct predominate over any supposed issues affecting only individual Class Members.

### 3. The Class Mechanism is a Superior Method of Adjudication.

"Rule 23(b)(3) requires, in addition to predominance, 'that a class action is superior to other available methods for the fair and efficient adjudication of the

18

controversy.'" *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (citing Fed. R. Civ. P. 23(b)(3)). "The rule asks us to balance, in terms of fairness and efficiency, the merits of a class action against those of "alternative available methods" of adjudication." *Id.* (citation omitted). "When the claims of class members are small, denial of class certification would effectively deprive these class members of judicial redress." *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 522 (D.N.J. 1997).

Here, the class is comprised of 385 individual cellphone owners who have claims that range from $500 to a few thousand dollars, depending on the number of telemarketing calls they received. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, the individual prosecution of their TCPA claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. The government has not brought any separate enforcement action. Finally, because this Action has now been settled, pending approval of the Court, the Court in general may accord less weight to this factor, which focuses on issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems...."). Thus, the superiority requisite is met.

Having satisfied each of the requirements for class certification under Rules 23(a) and 23(b), this Court should certify the proposed Settlement Class, for settlement purposes.

### F.    Plaintiff's Counsel Should be Appointed as Class Counsel.

When the Court grants class certification under Rule 23, it must also appoint class counsel who will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). In making this determination, courts consider proposed class counsel's: (i) work in identifying or investigating potential claims, (ii) experience in handling class actions and the types of claims asserted in the case at hand, (iii) knowledge of the applicable law, and (iv) resources they have committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed above, the proposed Class Counsel have dedicated substantial resources to the investigation and prosecution of the claims at issue in this case, and are committed to continue doing so throughout the pendency of this action. (Peluso Decl. ¶ 16.) Furthermore, Class Counsel have already immersed themselves into this case, rendering them particularly well suited to understanding the requisite knowledge in order to negotiate the settlement now before this Court. (*Id.*) Moreover, as previously discussed, proposed Class Counsel are well-respected members of the legal community, have significant experience litigating similar class actions, and have frequently been appointed lead class counsel by

courts throughout the country. (*Id.* ¶ 6.)

Therefore, the Court should appoint Steven L. Woodrow and Patrick H. Peluso of Woodrow & Peluso, LLC and Stefan Coleman of the Law Offices of Stefan Coleman, P.A., to serve as Class Counsel.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

In addition to certifying the Settlement Class, the Court must determine whether the proposed settlement warrants preliminary approval. There is a strong presumption in favor of settlements, especially in "'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). "Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing." *Mazon v. Wells Fargo Bank, N.A.*, Civil No. 10-700 (RBK/KMW), 2011 WL 6257149 *1 (D.N.J. Dec. 14, 2011) (citation omitted).

Generally speaking, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Bernhard v. TD Bank, N.A.*, Civil No. 08-4392 (RBK/AMD), 2009 WL 3233541 *1 (D.N.J. Oct. 5, 2009). Following preliminary approval, after notice is sent to the class, the court holds a final fairness hearing to consider the response of the class members and to evaluate

whether the settlement is fair, reasonable, adequate, and warrants final court approval. *Smith v. Professional Billing & Management Services, Inc.*, Civil No. 06-4453 (JEI), 2007 WL 4191749 *2 (D.N.J. Nov. 21, 2007).

"Proposed settlements are generally preliminarily approved when they emerge from serious, non-collusive negotiations, do not give preferential treatment to certain segments of the class or class representatives, and fall within the range of possible approval." *Rudel Corporation v. Heartland Payment Systems, Inc.*, Civ. No. 16-2229, 2017 WL 4422416 *2 (D.N.J. Oct. 4, 2017) (citations omitted). Indeed, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." *Manual for Complex Litig.*, § 30.44 (2d. ed. 1985).

The Parties' Settlement Agreement is the product of informed arm's length negotiations and, additionally, falls within "the range of possible approval" sufficient to warrant its preliminary approval.

### A.   The Settlement Agreement is the Result of Engaged, Arm's Length Negotiations Overseen By An Experienced Mediator.

"'[C]ourts generally recognize that a proposed class action settlement is presumptively valid where … the parties engaged in arm's length negotiations after

meaningful discovery.'" *In re Flonase Antitrust Litigation*, 291 F.R.D. 93, 100 (E.D. Pa. 2013) (citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000)).

The Settlement Agreement is the product of extensive arm's length negotiations by experienced counsel before a well-respected mediator and former judge. Plaintiff's counsel, Woodrow & Peluso, LLC and the Law Offices of Stefan Coleman, P.A., have been appointed class counsel in numerous consumer class actions and, more significantly, have served as Class Counsel in numerous TCPA class action settlements. (*Id.* ¶ 6.) The combined experience of Class Counsel, and the robust settlement result itself, demonstrate that the Settlement Class Members were well represented at the bargaining table. Additionally, Defendants retained experienced defense counsel to represent their interests in the negotiations as well. Accordingly, there can be no serious dispute that both sides to the settlement were represented adequately by competent counsel.

The negotiations between the Parties were hard fought, adversarial, and occurred over two days of intense mediation overseen by Judge John J. Hughes (ret.), an experienced mediator and former magistrate judge in this District. And in the weeks and months following the mediation the Parties continued to negotiate and resolve the finer points of the deal. Additionally, through the use of informal discovery, both parties were able to evaluate each other's positions and better

inform themselves about the risks going forward. As a result of the mediation and the informal discovery process, the parties emerged with a Settlement Agreement that provides strong relief to the Settlement Class.

Hence, the Parties' agreement to settle this litigation reflects a well-informed and engaged arm's length bargaining with the assistance of a highly experienced mediator. The Settlement Agreement is not the product of collusion; conversely, it reflects an independent judgment that is both fair and reasonable to both Parties.

### B.   The Settlement Agreement is a Preferable Alternative to the Risks Through Continued Litigation.

Plaintiff believes that her claims are strong, well supported by applicable law, and, if pursued, would result in a judgment in favor of the Class. However, Plaintiff is equally cognizant of the immediate benefits—both monetarily and in terms of prospective relief—that the Settlement Agreement presents. Furthermore, the uncertainties that are inherent in complex litigation pose risk to the Class going forward. Additionally, even if Plaintiff did prevail, the relief could potentially be held up by an appeal or a series of appeals. Contrary to the prospect of uncertainty, the Settlement Agreement provides substantial relief to Settlement Class Members without further delay, which argues in favor of approval.

### C.   The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class.

The Settlement Agreement allows each Class Member to claim a share of

Case 3:16-cv-05128-MAS-LHG   Document 18-1   Filed 01/22/18   Page 31 of 39 PageID: 104

the Settlement Fund. Each Class Member will be presented with the option to receive $1,000 cash or a $2,000 certificate towards Safety Tubs's products. Nothing about the Settlement Agreement is preferential, or deferential, to any segment of the class. Furthermore, given that Defendants' conduct giving rise to the claims was essentially the same for all members of the Class, this Settlement represents equal relief for all with the added benefit of personalized choice.

That Plaintiff may also seek an Incentive Award of up to $5,000.00 does not change this result. Plaintiff's right to seek an incentive award for stepping forward and participating in the litigation of this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litig.*, § 21.62 n.971 (4th ed. 2004). Furthermore, "'[i]ncentive awards are 'not uncommon in class action litigation and particularly where … a common fund has been created for the benefit of the entire class.' … In fact, '[c]ourts routinely approve incentive awards to compensate name plaintiffs for the services they provided and the risks they incurred." *Hall v. AT & T Mobility LLC*, Civil Action No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) (citation omitted).

Accordingly, no segment of the Class is set to receive preferential treatment.

**D.    The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval.**

There is little question that the proposed Settlement Agreement falls well "within the range of possible approval"—or, more appropriately, exceeds it. Again, the Settlement Class Members have the option of claiming either a $1,000 cash payment or a $2,000 certificate redeemable for walk-in bathtub products. (Settlement Agreement ¶ 2.1.) The claims are payable from a Settlement Fund totaling $600,000.00. (Settlement Agreement ¶ 1.36.) This amount is fair. Under the TCPA, a single violation can result in damages ranging from $500 to $1,500. Second, Defendants agreed to focused prospective relief, which ensures that they will revise the manner in which they obtain consent. This, in turn, will ensure that Defendants will procure the necessary prior written express consent before they ever call consumers on their cell phones. (Settlement Agreement ¶ 2.2.)

The results are even more impressive when compared to other TCPA class actions. Indeed, typical settlement values range, on a per claim basis, from $20.00 to $200.00:

| Case Name | Amount Per Claimant |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09-cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |

| | |
|---|---|
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Weinstein v. The Timberland Co., et al.*, 06-cv-454 (N.D. Ill.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

The instant Settlement Agreement plainly stacks up well when compared to the above listed settlements under the TCPA, each of which have been approved as fair, reasonable, and adequate. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *see also Rose v. Bank of Am. Corp.*, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant).

Finally, Class Counsel may request twenty-nine (29) percent of the Settlement Fund as attorneys' fees and costs. Courts in the Third Circuit find fees

as high as 45 percent of a common fund to be reasonable and routinely award a thirty percent fee. *See In re SmithKline Beckman Corp. Securities Litigation*, 751 F.Supp. 525, 533 (E.D. Pa. 1990) (collecting cases); *see also Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (same); *see also In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (approving 30% in fees of common fund of $10.25 million and stating "the settlement fund is not so large as to support a percentage *smaller* than thirty percent") (emphasis added); *see also Dartell v. Tibet Pharmaceuticals, Inc.*, Civil Action No. 14-3620, 2017 WL 2815073 *10 (D.N.J. June 29, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund.") (citation omitted).

Proposed Class Counsel will provide sufficient support for the fee award at least 14 days prior to the opt out/objection deadline. This will allow Settlement Class Members who wish to comment upon the fee award or request exclusion to do so with adequate time.

For the reasons stated above, the Settlement Agreement is reasonable and easily falls within the range of possible approval, as such, the Court should preliminarily approve the Agreement.

## VI.   NOTICE TO THE CLASS SHOULD ALSO BE APPROVED

As a final consideration, to satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Dukes*, 564 U.S. at 362. Likewise, Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is considered "adequate if it may be understood by the average class member." *Charron v. Pinnacle Group N.Y. LLC*, 874 F.Supp.2d 179, 191 (S.D.N.Y. 2012). The notice itself must describe: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

As evidenced by the proposed notice documents (*see* Exhibit B), the Notice plan developed by the Parties is the best practice under the circumstances. Within 7 days of Preliminary Approval, the Settlement Administrator will be provided with

the Class List, as maintained by Defendants, containing the cellular telephone

numbers, names of the cellphone owners, and last known mailing address of all

385 Settlement Class Members. (Settlement Agreement ¶ 4.2.) For those numbers

for which an address cannot be determined the Settlement Administrator will

attempt to determine such addresses through utilizing the national change of

address registry and other appropriate reverse lookup methods. (*Id.*) Defendants

have already taken steps to verify the address information for all 385 Class

Members. (Peluso Decl. ¶ 15.) The Settlement Administrator will then send each

Class Member, via first-class mail, a Notice Form and a Claim Form (*see* Ex. B).

(Settlement Agreement ¶ 4.2.)

As a final point, mailed notice is presumptively reasonable and satisfies the

requirements of due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

812 (1985) (finding the procedure "where a fully descriptive notice is sent by first-

class mail to each class member, with an explanation of the right to 'opt-out,'

satisfies due process"). Not surprisingly, numerous courts have approved mailings

as an adequate method of notice to class members. *See In re Ins. Brokerage

Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving

settlement with postcard notice); *see also In re Flonase Antitrust Litig.*, 291 F.R.D.

93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *see also

Milliron v. T- Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009),

aff'd, 423 F. App'x 131 (3d Cir. 2011) (preliminarily approving settlement with postcard notice for non-current customers and bill stuffers for current customers); *see also In re AremisSoft Corp. Securities Litigation*, 201 F.R.D. 109, 124 (D.N.J. 2002) (finding mass mailings to be adequate notice to the class members).

Given that the class size consists of only 385 members, and the contact information provided by Defendants, the likelihood of the mailings reaching all Class Members is rather high. Thus, the Court should find the notice plan to be adequate and grant preliminary approval.

## VII.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) granting preliminary approval of the Settlement Agreement in this matter; (2) certifying the proposed Settlement Class for settlement purposes; (3) approving the form and content of the Notice to be sent to the members of the Settlement Class pursuant to the plan detailed in the Settlement Agreement; (4) appointing proposed Class Counsel and the Class Representative to represent the Settlement Class; (5) setting dates for filing claims, requesting exclusion, and objecting; and (6) scheduling a final fairness hearing.


Dated: January 22, 2018                    Respectfully submitted,

                                           Nancy Rinehart, *individually and on behalf of all others similarly situated,*

31

By: s/Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675
Fax: (303) 928-0809

*admitted pro hac vice

Stefan Coleman
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
1072 Madison Ave, Ste. 1
Lakewood, NJ 08701
Tel: 877-333-9427

32

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on January 22, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of filing to all counsel of record for each party.


<u>s/ Stefan Coleman</u>