# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NANCY RINEHART**, individually and on behalf of all others similarly situated,<br><br>            *Plaintiff*,<br><br>*v.*<br><br>**AS AMERICA, INC.** d/b/a American Standard, a Delaware corporation and **SAFETY TUBS COMPANY, LLC**, a Delaware limited liability company,<br><br>            *Defendants.* | CASE NO. 3:16-CV-05128-MAS-LHG |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>REASONABLE ATTORNEYS' FEES</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iv

I.   INTRODUCTION ....................................................................1

II.  LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND ...............2

    A.   The TCPA and its Implementing Regulations. ...................................2

    B.   Plaintiff's Allegations and Proposed Class Counsel's Investigation of the Claims. ................................................................4

    C.   Litigation, Early Settlement Discussions, and Mediation. ..............5

    D.   Terms of the Settlement Agreement and Provision for Reasonable Attorneys' Fees and Incentive Awards ...............................................7

III. ARGUMENT........................................................................10

    A.   Class Counsel's request for attorneys' fees of 29% of the settlement fund is consistent with awards in other common fund cases in this Circuit. ...........................................................11

        1.   The size of the fund represents significant value for Settlement Class Members given the relatively-small size of the Class. ................................................................12

        2.   The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel is presently unknown and will be addressed in papers filed in support of Final Approval following the objection/exclusion deadline. ..........................16

        3.   The skill and efficiency of the attorneys involved support the requested attorneys' fees........................................16

        4.   The complexity and duration of the litigation supports the request for attorneys' fees.......................................17

5.    As Class Counsel took this case on contingency against a large sophisticated business, the risk of nonpayment supports the fee award..................................................18

6.    The substantial time devoted to the case by Class Counsel also supports the fee award...................................................20

7.    An award of 29% of the Settlement Fund is comparable to awards in similar cases. ...........................................21

8.    The value of benefits conferred by counsel, the percentage counsel would have negotiated as a fee had representation been undertaken on contingency basis, and any innovative terms of settlement all support the requested attorneys' fees. ..................................................................23

B.    Class Counsel's request for attorneys' fees is also supported a lodestar crosscheck—a multiplier of only 1.18 would be needed to justify the requested fees....................................................24

C.    The Court should approve Class Counsel's expenses....................27

D.    The Court should also approve the Class Representative Incentive Awards..................................................................28

IV.    CONCLUSION .........................................................29

# TABLE OF AUTHORITIES

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................................15

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) ........................................................22

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741 (N.D. Ill. July 23, 2015) .......................................................21

*Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000) .............................................10

*Cohorst v. BRE Props., Inc.*, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ..........15

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ..........................28

*Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369 (W.D. Pa. 2002).......................................................................................11, 24

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) ...............3

*Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598 (9th Cir. 2011).....................3

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) .............10, 11, 26

*Hageman v. AT & T Mobility LLC*, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ......................................21

*In re AT & T Corp.*, 455 F.3d 160 (3d Cir. 2006) ............................................10, 23

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015)......................................................................14

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ...........................10, 11, 24

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001).............15, 25, 27

*In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484 (E.D. Pa. 2003)...................22

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).......................................................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ........................................................................10, 24

*In re Greenwich Pharm. Sec. Litig.*, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) .......................................22

*In re Heritage Bond Litig.*, 2005 WL 1594389 (C.D. Cal. June 10, 2005) .............15

*In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..................................28, 29

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................15

*In re Prudential Ins. Co. of America Sales Practice Litig.,* 148 F.3d 283 (3d Cir. 1998).................................................................................10, 23, 25

*In re Residential Doors Antitrust Litig.,* 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ..........................................29

*In re Rite Aid Corporation Securities Litig.,* 396 F.3d 294 (3d Cir. 2005) ......*passim*

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) ....22

*In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363 (E.D. Pa., Sept. 10, 2009).........................................................................................23

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .....................................22

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 2016 WL 611441 (3d Cir. Feb. 16, 2016).......................................................................................21

*Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208 (E.D. Mo. June 10, 2015)...............................21, 29

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) ...............11, 22

*Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131 (3d Cir. 2011) .........................25

*Mims v. Arrow Financial Servs.*, LLC, 132 S. Ct. 740 (2012)..................................3

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............14

*Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011).....................................................................................21

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)........................3

*Smith v. Dominion Bridge Corp.*, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ...................................9, 23

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2015 WL 9413143 (W.D. Ky. Dec. 22, 2015) ..................................................................................22

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) ..........21

## STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*..........................*passim*

Herbert Newberg & Alba Conte, Newberg on Class Actions (3d ed.1992)............15

## I.    INTRODUCTION

The class action Settlement Agreement reached in this Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") case truly presents an outstanding result for Settlement Class Members who file timely and valid claims. Indeed, under the terms of the Settlement, As America, Inc. and Safety Tubs Company, LLC (collectively "Defendants" or "American Standard") have created a Settlement Fund in the amount of $600,000, from which Settlement Class Members may make claims for either cash payments up to $1,000 or for certificates up to $2,000 that can be used to purchase any safety tub product. American Standard will also be required to ensure it is in compliance with the TCPA going forward. This Settlement Agreement thus presents significant benefits to the Settlement Class Members and well exceeds the typical amount awarded in TCPA class actions.

Such impressive results are the direct result of the meaningful time, effort, and energy devoted to the litigation by Settlement Class Counsel and Class Representative Nancy Rinehart ("Plaintiff" or "Rinehart"). Indeed, the Settlement Agreement and its favorable terms were only made possible by Class Counsel's hard work investigating and prosecuting the case and negotiating the terms through a formal mediation process that included two full-day mediation sessions.

In recognition and compensation for this work, the Settlement Agreement

calls for an attorneys' fee award to Class Counsel in the amount of 29% of the Settlement Fund ($174,000) and an incentive award of $5,000 to Rinehart for dutifully acting as the Class Representative. Such a fee and incentive award are demonstrably reasonable and fall below the benchmark for attorneys' fee awards in the Third Circuit when a common fund is created. Further, the requested fee is reasonable under the lodestar method based on the amount of effort and time expended by Class Counsel to bring, prosecute, and settle this action. Indeed, following a lodestar crosscheck, a multiplier of only 1.18 is required to substantiate the fee request, which is within the range typically seen in similar settlements.

The Court should approve the incentive award for Settlement Class Representative Rinehart as well. Plaintiff is seeking an incentive award in the amount of $5,000, which is reasonable when viewed in light of her role in bringing this suit, and commensurate with incentive awards ordered in comparable settlements. Put simply, without Reinhart's steadfast participation as the named Plaintiff, the Settlement would never have been achieved in the first instance.

For all of these reasons, and as discussed further below, Plaintiff respectfully requests the Court enter an Order granting the instant Motion and approving the negotiated attorneys' fees and incentive award.

## II.    LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### A.    The TCPA and its Implementing Regulations.

A brief summary of the law that forms the basis of Plaintiff's claims helps put the Settlement Agreement in its proper context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology . . . ." *Mims v. Arrow Financial Servs.*, LLC, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S. Ct. at 745.

To prevail on a claim under the TCPA, a plaintiff must show that a person: (1) made a telephone call; (2) using an Automatic Telephone Dialing System ("ATDS"); (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiff and other Class Members provided their prior express consent to receive such telephone calls is an affirmative defense. *See, e.g., Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598, 600 n.1. (9th Cir. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (recognizing that it is a defendant's burden to show prior express consent was obtained as an affirmative defense).

The TCPA also prohibits multiple unsolicited calls made to phone numbers that have been registered on the national Do Not Call registry, a list maintained by

3

the federal government. *See* 47 U.S.C. § 227(c). Consumers who register their phone numbers are entitled to heightened protections, including a cause of action whenever they receive more than one unsolicited call during any 12-month period where their phone number had been on the registry for at least 30 days. *See* 47 U.S.C. § 227(c)(5).

The TCPA additionally sets statutory damages of $500 per violation and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B). Such damages may be trebled where willfulness is shown. *See* 47 U.S.C. § 227(b)(3)(C).

### B.    Plaintiff's Allegations and Proposed Class Counsel's Investigation of the Claims.

This case begins with the national Do Not Call registry. That is, on August 27, 2005, Plaintiff Rinehart registered her cellular phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls. (Compl. at 22.) Notwithstanding the fact that her number had been on the Do Not Call registry for over a decade, beginning on June 23, 2016, Plaintiff Rinehart began receiving unsolicited telemarketing calls from Defendants. (*Id.* at 23.)

Plaintiff received multiple calls from Defendants on a daily basis attempting to market and sell their "Safety Tubs" brand of walk-in bathtubs. (*Id.* at 24-25.) In making the calls at issue, Plaintiff claims Defendants used an automatic telephone dialing system. (*Id.* at 23.) Critically, Plaintiff claims she never provided her prior

express written consent to be called. (*Id.* at 27.)

Given the persistence of the calls, Plaintiff sought out legal assistance by contacting the Law Offices of Stefan Coleman, P.A. (Declaration of Patrick H. Peluso, "Peluso Decl.", attached hereto as Exhibit A, ¶ 2.) Upon being contacted by Rinehart, attorney Coleman's office promptly commenced a thorough investigation into her allegations and claims, including a review of Defendants' websites, public information regarding complaints about Defendants' calling practices, and the phone calls placed to Plaintiff. (*Id.* ¶ 3.) Thereafter, Mr. Coleman contacted Steven L. Woodrow and Patrick H. Peluso, experienced TCPA class action counsel, in an effort to work together to prosecute the case. (*Id.* ¶ 4.)

Counsel thereafter worked together to draft Rinehart's class action complaint, which was ultimately filed on August 23, 2016 (3:16-cv-05128-MAS-LHG). (*Id.* ¶ 7.) (Dkt. 1.)

### C.   Litigation, Early Settlement Discussions, and Mediation.

Defendants answered November 3, 2016. (Dkt. 9.) Counsel for the Parties thereafter began discussions regarding the merits of the case. These frank talks helped facilitate an exchange of information relevant to the key issues in the case, including the manner by which Defendants claimed they obtained prior express consent. As a result of this back and forth dialogue, counsel for the Parties agreed to engage in private mediation in an effort to resolve the dispute. (Peluso Decl. ¶¶

5.)

As stated above, prior to the mediation the parties exchanged informal discovery. This included information identifying the approximate number of unique telephone numbers that had been called for the same purpose (and using the same equipment) as Plaintiff and the total number of calls placed to each cellphone user. And as set forth above, it also included the manner by which Defendants' claimed to have procured Plaintiff's phone number and consent to call (*i.e.*, the contractorlink.net website). (*Id.* ¶ 7.) Proposed Class Counsel used this information to estimate the size of the proposed classes and to calculate the extent of Defendants' liability, exposure, and ability to settle. (*Id.* ¶ 8.)

Counsel for the Parties ultimately agreed to mediate with the Honorable John J. Hughes (ret.) of JAMS in Philadelphia, a respected third-party neutral with substantial class action experience. (*Id.* ¶ 6.) On June 12, 2017, counsel for the Parties convened at JAMS's offices in Philadelphia to begin the process. (*Id.* ¶ 9.) Following two full days of arm's-length negotiations, the Parties emerged from the mediation with a framework for settlement. (*Id.* ¶ 10.) Only after the Parties reached an agreement with respect to the relief to be provide to the Settlement Class members did the Parties negotiate an incentive award for Class Representative Reinhart and an award of reasonable attorneys' fees for Settlement Class Counsel. (*Id.* ¶ 11.)

Hence, the instant Settlement is the result of substantial and meaningful efforts expended by counsel for all Parties. And as explained below, the terms of the Settlement Agreement stack up well when compared to other TCPA settlements—indeed, the results here are exceptionally favorable for the Settlement Class by nearly any measure. As such, and as set forth below, the Court should grant preliminary approval.

Plaintiff moved for preliminary approval on January 22, 2018. (Dkt. 18.) The Court held a hearing on the Motion on March 18, 2018 (Dkt. 22) and granted Preliminary Approval on March 26, 2018. (Dkt. 24.) A summary of the Settlement's key terms follows.

### D.   Terms of the Settlement Agreement and Provision for Reasonable Attorneys' Fees and Incentive Awards.

The "Settlement Class" is defined as: all persons in the United States who (1) from a date four years prior to the filing of this Complaint until the date notice is disseminated to the Class, (2) were called by Defendants (or any third-party acting on behalf of Defendants), (3) on the persons' cellular telephones, (4) for the purpose of selling Defendants' products or services, and (5) had their lead information obtained by Defendants via the contractorlink.net website. (Settlement Agreement ¶ 1.7.)

Class Counsel, through their efforts in the case in terms of pre-suit investigation, briefings, the exchange of informal discovery, conferences with

opposing counsel, and the mediation process, were able to negotiate and reach a

settlement that provides substantial monetary and prospective relief to Settlement

Class members who file claims.

Under the terms of the Settlement, American Standard has established a

Settlement Fund consisting of $600,000 from which Class Members may make

claims to receive either individual cash payments of $1,000 or certificates for

$2,000 to use towards the purchase of a Safety Tubs brand product. All payments

made pursuant to the Settlement will come from the Settlement Fund, including:

(1) the payment of all claims (submitted and paid in accordance with the provisions

below), (2) all administrative, notice, and claims expenses (the "Settlement

Administration Costs"), (3) the incentive awards to the Class Representatives

("Incentive Award"), and (4) any award of reasonable attorneys' fees and

reimbursement of expenses ("Attorneys' Fees and Costs") as approved by the

Court. (Peluso Decl. ¶ 12.) Such amounts dwarf the relief commonly secured by

TCPA class action settlements.

In addition to the monetary relief provided to Class Members who file

claims, American Standard has also agreed to take forward-looking action to

prevent unlawful actions to continue in the future. That is, through the Settlement,

Defendants have agreed to use commercially-reasonable efforts to comply with the

TCPA for a period of eighteen (18) months from the Effective Date (which

includes verifying that their leads have provided prior express consent to be called).

As stated above, the Court held a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement and granted preliminary approval to the Settlement Agreement on March 26, 2018. Following the granting of preliminary approval, the Settlement Administrator caused Notice to be sent to the last known mailing address of 384 Class Members. (Peluso Decl. ¶ 14.) Each Class Member was sent, via first-class mail, the approved Notice Form and Claim Form. (*Id.*) Additionally, Class Counsel has obtained the Class List and has started the process of calling each individual Settlement Class Member so as to encourage and assist each of them with the filing of their claims. (*Id.* ¶ 15.)

The Settlement Agreement also provides that American Standard will not oppose an application submitted by Plaintiff for an incentive award to Rinehart, as representative of the Settlement Class, subject to Court approval, of five thousand dollars ($5,000). (Settlement Agreement Art. ¶ 8.1.) The Settlement Agreement further states that American Standard will not oppose an application submitted by proposed Class Counsel for an award of one hundred seventy-four thousand dollars ($174,000 USD) in Attorneys' Fees and Expenses. (*Id.* ¶ 8.1.)

As explained below, given the substantial relief obtained for the benefit of the Settlement Class, the Court should approve the requested attorneys' fees of

9

$174,000, which represents 29% of the Settlement Fund established under the Settlement Agreement attained in this case before considering the value of the prospective relief.

## III.   ARGUMENT

When considering attorney's fees in common fund settlements in the Third Circuit, "the percentage-of-recovery method has long been preferred" over the lodestar method.[1] *See, e.g., Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000) (outlining the seven "*Gunter* factors", analyzed below, that courts must consider when determining the reasonableness of the requested percentage); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir. 2000); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *In re Prudential*, 148 F.3d at 333-34 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotations and

---

[1] Operating as an exception to the American Rule, the common fund doctrine "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (*citing In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005)) (internal quotations and citations omitted).

citations omitted); *see also In re AT & T Corp.,* 455 F.3d 160, 164 (3d Cir. 2006) (same) (internal quotation marks omitted); *see also In re Rite Aid Corporation Securities Litig.,* 396 F.3d 294, 300 (3d Cir. 2005).[2] Appropriate percentages routinely range from one-third up to as high as 45 percent of a common fund. *McDonough v. Toys R Us, Inc*., 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) (collecting cases); *Smith v. Dominion Bridge Corp*., 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (same).

The lodestar calculation—class counsel's time in the case multiplied by its hourly rates—is not to be ignored, however. Rather, the Third Circuit suggests a "lodestar/multiplier" cross-check, through which the Court may adjust the percentage award if it would require an unreasonable multiplier. *See In re Rite Aid Corp*., 396 F.3d at 300; *see also In re Cendant Corp. Litig*., 264 F.3d 201, 215, 256 (3d Cir. 2001); *see also Erie Cty. Retirees Ass'n v. Cty. of Erie*, *Pennsylvania*, 192 F. Supp. 2d 369, 377-78 (W.D. Pa. 2002).

As set forth below, Class Counsel's request for 29% of the Settlement Fund is fully supported by the *Gunter* factors, additional considerations including the

---

[2] Commentators have noted that "one purpose of the percentage method" of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—"is to encourage early settlements by not penalizing efficient counsel. . . ."
*Gunter*, 223 F.3d at 198 (*citing* Manual for Complex Litigation, supra, § 24.121, at 207, citing 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14.03, at 14-3 to 14-7 (3d ed. 1992)).

strength of the settlement, and a lodestar cross check.

**A.    Class Counsel's request for attorneys' fees of 29% of the settlement fund is consistent with awards in other common fund cases in this Circuit.**

In determining an appropriate attorney fee award under the percentage-of-recovery approach, courts are guided by the seven well-known "*Gunter*" factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) awards in similar cases. *In re Rite Aid*, 396 F.3d at 301 (*citing Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000)). These factors "need not be applied in a formulaic way ... in certain cases, one factor may outweigh the rest." *Id.*

As set forth below, each of the Gunter factors, plus additional considerations, supports granting the requested attorneys' fees.

**1.    The size of the fund represents significant value for Settlement Class Members given the relatively-small size of the Class.**

The first factor examines the size of the fund and the number of persons benefitted. Here, Class Counsel not only secured substantial amounts for the Class

members (again, $1,000 in cash or $2,000 in a certificate is available)—the
Settlement Agreement also benefits consumers going forward because American
Standard has agreed to take commercially-reasonable efforts to comply with the
TCPA.

Such results exceed the amount per claim typically available in TCPA
settlements, as illustrated by the following chart:

| CASE NAME | AMOUNT PER CLAIMANT |
| --- | --- |
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |

| | |
|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.,* 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

Of course, $1,000 in cash (or $2,000 in a certificate) is far larger and more meaningful than $20 or $200. The instant Settlement is thus demonstrably reasonable when weighed against other settlements under the TCPA that have been approved as fair, reasonable and adequate. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery and approving $34.60 per claiming member); *see also Rose v. Bank of Am. Corp.*, 5:11-CV-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of

acceptable TCPA settlements and approving a range of $20.00 to $40.00 per claimant).

It is important to recall that litigating a nationwide class action requires "unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Although the skill required to successfully prosecute a class action is evident, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig.*, Case No. 02-ML-1475-DL, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Additionally, the quality and expertise of opposing counsel is important to consider. *See Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011).

As an additional point, absent unusual circumstances a smaller common fund <u>increases</u> the percentage of recovery. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) (Emphasis added.)[3] That is, $600,000, while substantial, is not a settlement fund equal to tens of millions (or even hundreds of millions of dollars, as some class action settlements can reach) that would warrant

---

[3] To be sure, under the percentage-of-recovery approach, the Court should look at the amount of fees requested in relation to the total settlement benefits conferred, regardless of whether those benefits are actually claimed. *See e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); 2 NEWBERG § 1.18 ("[I]t is now settled that class counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members.").

a smaller percentage so as to avoid a windfall to Class Counsel.

As such, the Settlement Agreement secures the maximum funds that could have been obtained for the most people under the circumstances. There can be little argument, therefore, that the first factor weighs in favor of approving the requested attorneys' fees.

> **2.     The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel is presently unknown and will be addressed in papers filed in support of Final Approval following the objection/exclusion deadline.**

At this time the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel is unknown. No objections to the Settlement has been received at this time; however, several weeks remain before the objection deadline of June 29, 2018. As such, objections to the settlement or to the request for attorneys' fees, to the extent any are filed, will be addressed in Class Counsel's forthcoming Motion for Final Approval of Class Action Settlement. Having said that, given the strong relief made available by the Settlement it is unlikely that there will be substantial objections.

> **3.     The skill and efficiency of the attorneys involved support the requested attorneys' fees.**

Class Counsel are well-respected members of the legal community, have significant experience litigating similar TCPA class actions, and have frequently been appointed lead class counsel by courts throughout the country for class action

settlements in general, and TCPA class action settlements more specifically. (Peluso Decl. ¶¶ 16, 27.)

Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the investigation and prosecution of the claims at issue in this case, and towards the settlement, and will continue to do so throughout the pendency of both. (Peluso Decl. ¶ 17.) Class Counsel worked to ensure that they were (and remain) well versed in both the facts of the case and the elements of the Class's legal claims and Defendants' defenses. (*Id.* ¶ 19.) It was with this knowledge that Settlement Class Counsel successfully negotiated the settlement on terms that are favorable to the Class and were achieved efficiently, through a minimal use of the Court's resources. (*Id.* ¶ 22.) Class Counsel pushed for early settlement discussions and vigorously prepared for the two full-day mediation sessions that resulted in the Settlement.

Consequently, the skill and efficiency of the attorneys' supports the requested fees.

### 4.    The complexity and duration of the litigation supports the request for attorneys' fees.

This lawsuit was filed nearly two years ago. While the Parties commenced their settlement discussions early on in the case, the intricacy and nature of the litigation plainly support the request for attorneys' fees. Counsel for the parties exchanged discovery on informal bases prior to and throughout the mediation

process, including discovery regarding the size and scope of the class and the strength of the claims, such that Class Counsel was able to fully prepare for the mediation.

Indeed, Settlement Class Counsel was required to prepare for a 2-day mediation session with Magistrate John Hughes (Ret.) of JAMS in Philadelphia. Substantial work was performed in advance of both sessions so as to ensure that the proposed Settlement Class Members would be adequately represented in the discussions by knowledgeable advocates. And, of course, meaningful work was performed following the mediation to finalize the settlement, including preparing all documents for the Court's approval, working with the settlement administrator to launch the Settlement Website and to disseminate the Class Notice, responding to inquiries made by Class Members, and affirmatively reaching out to Class Members to encourage/assist them with the filing of their claims.

As such, although the parties started their settlement discussions early (at the Court's urging), the complexity of those negotiations and of the litigation more generally cannot seriously be questioned. This factor thus supports awarding the requested fees.

> **5.     As Class Counsel took this case on contingency against a large sophisticated business, the risk of nonpayment supports the fee award.**

The fifth factor, which assesses the risk of nonpayment, also weighs in favor

18

of granting the requested attorneys' fees. Class counsel have not been paid hourly for their services. Indeed, to date Class Counsel hasn't received any compensation for their work to date. Rather, their agreements with the named plaintiff show that they assumed the risk of nonpayment in this case by taking the matter on a contingency basis. (Peluso Decl. ¶ 18.) And although Class Counsel viewed the merits of the case as being relatively strong, that by no means ensured that they would receive compensation for bringing and litigating the action. Defendants hired experienced counsel and repeatedly expressed a willingness to vigorously defend the matter. And as the Court is well aware, even the strongest cases have faults, and even large jury verdicts are not immune from being overturned following appellate review.

This is particularly true given the strength of the relief made available. Under the TCPA, Class Members would be entitled to $500 per violation, or $1,500 if willfulness were to be proven. *See* 47 U.S.C. 227(c)(5). Under the Settlement, each Class Member may choose $1,000 in cash or $2,000 worth of safety tub products.[4] Thus, proceeding to trial would only garner a marginal benefit, if any.

Indeed, at the time of filing this lawsuit on a contingent fee basis, Class

---

[4] It is worth noting that any Settlement Class Member who elects to receive a $2,000 certificate for Safety Tubs products plainly values such a certificate at more than $1,000.

Counsel knew they may spend hundreds of hours of attorney time in contested litigation with no guarantee of recovery. To date, they have, in fact, devoted hundreds of hours representing Plaintiff and the Class without compensation and spent time on the issues that may have been spent on cases or work matters. (Peluso Decl. ¶ 20.) And as explained further below, Class Counsel has also advanced the costs of this suit, a total of $12,016.31, without reimbursement.

As such, this factor also supports granting the requested attorneys' fees.

### 6. The substantial time devoted to the case by Class Counsel also supports the fee award.

As indicated above with respect to the complexity of the case and the duration of the litigation, and as set forth more completely below with respect to the lodestar cross-check, Class Counsel has devoted substantial time and resources to prosecuting the case, negotiating the Settlement Agreement, and seeing the resolution through to completion. All told, two plaintiffs firms combined on this case and expended a total of 387.7 hours pursuing the litigation and resolution. The work performed necessarily prevented Class Counsel from pursuing other matters, including hourly work that does not carry a concomitant risk of nonpayment. Consequently, the time that Class Counsel have and continue to devote to the case supports the requested attorneys' fees.

And as a final point here, the time spent is in addition to $12,016.31 that Class Counsel have incurred in out-of-pocket costs and expenses. In addition to the

more standard filing and service charges, such expenses include costs of the

mediation sessions and travel expenses for the mediations and hearings.

This factor therefore supports the requested attorneys' fees as well.

### 7. An award of 29% of the Settlement Fund is comparable to awards in similar cases.

Courts faced with TCPA class action settlements that feature a common fund

routinely award attorneys' fees greater than the 29% of the Settlement Fund sought

here. *See Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485,

2016 WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming

award of one-third of reversionary settlement fund in TCPA class action settlement

where requested fees were twice the amount of class counsel's lodestar); *see also*

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL

4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in

TCPA class action); *see also Hageman v. AT & T Mobility LLC*, No. CV 13-50-

BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee

award of "$15 million, or one-third of the common fund recovery" in TCPA class

action settlement against AT&T); *see also Saf–T–Gard Int'l, Inc. v. Seiko Corp. of*

*Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund

in multimillion dollar TCPA class action); *see also Vandervort v. Balboa Capital*

*Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards

attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million

settlement fund ceiling amount."); *see also Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (Approving fees in TCPA settlement representing "34% of the actual fund available to Class Members."); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015), *appeal dismissed* (Jan. 27, 2016), *appeal dismissed* (Feb. 1, 2016), *appeal dismissed* (Feb. 3, 2016) (awarding 36% of common fund in TCPA class action settlement); *see also Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one third of fund as attorney's fees).

Likewise, a fee award of 29% of the Settlement Fund is consistent with awards approved in consumer class actions more generally outside the TCPA context. *See In re Greenwich Pharm. Sec. Litig.*, CIV. A. 92-3071, 1995 WL 251293, at *6–7 (E.D. Pa. Apr. 26, 1995) (awarding fee of 33.3%); *see also In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (noting range of fees from 19% to 45%); *see also Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007) (approving a 35% award for a $39,750,000 common fund); *see also In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484, 497 (E.D. Pa. 2003) (approving an award of 33.3% against a $7,000,000 common fund). Indeed, courts award percentages that routinely range from one-third up to as high as 45 percent of a

common fund. *See McDonough*, 80 F. Supp. 3d at 653 (collecting cases); *see also*

*Dominion Bridge Corp*, 2007 WL 1101272, at *9 (E.D. Pa., Apr. 11, 2007) (same);

*see also In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D.

Pa., Sept. 10, 2009) (approving 30% in fees of common fund of $10.25 million and

stating "the settlement fund is not so large as to support a percentage smaller than

thirty percent") (emphasis supplied).

As such, a fee award of 29% falls well within the range of awards approved

in TCPA and other consumer class action settlements.

> **8.    The value of benefits conferred by counsel, the percentage
> counsel would have negotiated as a fee had representation
> been undertaken on contingency basis, and any innovative
> terms of settlement all support the requested attorneys'
> fees.**

In addition to warning against the formulaic application of the *Gunter*

factors, courts have also cautioned that *Gunter's* considerations are "not intended

to be exhaustive." *In re AT & T,* 455 F.3d at 165; *see also In re Prudential Ins. Co.*

*of America Sales Practice Litig.,* 148 F.3d 283, 340 (3d Cir. 1998) (noting three

additional factors that may be relevant to common-fund fee analysis: value of

benefits conferred by counsel as distinguished from benefits conferred by other

parties; percentage counsel would have negotiated as fee had representation been

undertaken on contingency basis; and any innovative terms of settlement).

Such additional considerations readily weigh in favor of supporting the

requested fees. Class Counsel conferred all of the benefits secured under the Settlement Agreement and took the case on a contingency basis (*see* Peluso Decl. ¶ 18.) Had such a percentage been negotiable from the outset, Class Counsel would have negotiated a recovery of 33.33% at a minimum, and more likely would have negotiated a higher amount, such as 40%, which is more consistent with present-day contingency fees.

Lastly here, the Settlement Agreement unquestionably contains innovative terms designed to maximize relief to the Settlement Class Members. First, the amounts available are impressive, and consumers are given a choice between cash or a certificate that is worth twice as much by face value. Second, Defendants have agreed to take meaningful action to render its calling practices compliant with the TCPA. As a result, Settlement Class Members who file timely claims are poised to receive substantial benefits when compared to the typical TCPA class action settlement.

**B.    Class Counsel's request for attorneys' fees is also supported a lodestar crosscheck—a multiplier of only 1.18 would be needed to justify the requested fees.**

As explained above, in the Third Circuit, the percentage award is subject to a "lodestar/multiplier" crosscheck. *See In re Rite Aid Corp.*, 396 F.3d at 300; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 215, 256 (3d Cir. 2001); *see also In re Gen. Motors Corp.*, 55 F.3d at 821; *see also Erie Cty. Retirees Ass'n v. Cty. of*

*Erie, Pennsylvania*, 192 F. Supp. 2d at 377-78. "[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method", it entails "neither mathematical precision nor bean-counting" and the Court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp*., 396 F.3d at 306-07. "In performing the lodestar cross-check, the district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d at 306 (3d Cir. 2005), *as amended* (Feb. 25, 2005). "Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential,* 148 F.3d 283, 341 (3d Cir.1998) (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, S 14.03 at 14–5 (3d ed.1992)); *see also In re Cendant Corp. PRIDES Litig*., 243 F.3d 722, 742 (3d Cir. 2001); *see also Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (although "the lodestar multiplier need not fall within any pre-defined range…we have approved a multiplier of 2.99 in a relatively simple case.")

Applied here, Class Counsel's base lodestar of $137,363.50 readily serves as a fair crosscheck against the requested percentage award. Broken down by attorney, Class Counsel's lodestar is calculated as follows:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (WP) | Partner | $440 | 33.6 | $14,784 |
| Patrick Peluso (WP) | Partner | $340 | 252.3 | $85,782 |
| Stefan Coleman (SC) | Partner | $475 | 53.3 | $25,317.50 |
| Blake Duggar (SC) | Associate | $250 | 22.7 | $5,675 |
| Taylor Smith (WP) | Associate | $225 | 25.8 | $5,805 |
| **LODESTAR** | | | 387.7 | $137,363.50 |

The hours spent are manifestly reasonable in light of the work required to attain such a favorable result for the Class.[5] Indeed, from their pre-suit investigation through today Settlement Class Counsel has devoted substantial time and resources to the successful prosecution and resolution of the case, including:

- A pre-suit investigation into the facts and claims;

- Drafting and filing the pleadings;

- Designing and executing on a successful litigation and settlement strategy;

- Engaging in early informal discovery as well as exchanging information through the mediation process;

- Mediating the case through two contentious full-day mediation sessions with Magistrate Judge John Hughes (Ret.) of JAMS in Philadelphia;

- Negotiating the settlement and drafting and revising the settlement

---

[5] *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 200 (3d Cir. 2000) (describing the process—of providing time summaries initially, with further billing records to be provided should the court request them—as "consonant with the practice in this circuit."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (district court may "rely on summaries.")

documents;

- Finalizing the agreement and all related settlement papers and presenting the settlement to the Court for preliminary approval; and

- Answer Settlement Class Member inquiries and assisting Settlement Class Members with the claims process.

(Peluso Decl. ¶ 21.)

In short, Class Counsel have devoted significant time to the successful investigation, prosecution, and settlement of these claims. In the process they have expended substantial time and have incurred a base lodestar equal to $137,363.50. Given this amount, the total fees being requested, ($174,000 - $12,016.31 in expenses = $161,983.68), requires only a 1.18 multiplier.[6] A 1.18 multiplier falls well within the range of multipliers that have been recognized as reasonable in this Circuit. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (reiterating that multipliers from 1 to 4 are common). And this analysis does not include the additional attorney time required from this point through final approval and the close of the claims process, which will include travel to New Jersey, additional significant drafting of the final approval papers, and assisting Class members with the claims process.

Accordingly, the requested attorneys' fees represent a multiplier of only 1.18

---

[6] To the extent the Court determines that it wishes to review Class Counsel's time entries, Class Counsel is readily able to provide such time entries for *in camera* review.

above Class Counsel's lodestar. This further evidences the reasonableness of the requested attorneys' fees.

## C.    The Court should approve Class Counsel's expenses

The Court should approve Class Counsel's reasonable out-of-pocket expenses of $12,016.31. These costs reflect Class Counsel's actual expenditures incurred in researching and initiating the lawsuit, litigating the case, and engaging in the mediation process and settlement.

Given the results achieved and the fact that the expenses incurred where essential to successfully prosecuting the case and achieving a resolution, the Court should approve the request for reimbursement of expenses in the amount of $12,016.31.

## D.    The Court should also approve the Class Representative Incentive Awards.

Subject to the Court's approval, the Agreement also provides that Plaintiff Rinehart shall receive and incentive award of five thousand dollars ($5,000.00) each to be paid out of the Settlement Fund. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citations omitted); *see In re Linerboard Antitrust Litig.*, 2004 WL 1221350 at *18 (E.D. Pa. June 2, 2004) (*citing In re Plastic Tableware Antitrust Litig.*, 2002 WL 188569 (E.D. Pa. Dec. 4,

1998) ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.")).

Here, Plaintiff Reinhart's involvement was critical to the resolution of this litigation and ultimate success of the Agreement. (Peluso Decl. ¶¶ 24, 25.) Plaintiff assisted counsel by helping in the investigation of her claims and providing counsel with valuable information relating to their receipt of the calls at issue. (*Id*.) Plaintiff's willingness to make the time commitment and undertake the responsibilities and risks involved in bringing a representative action resulted in substantial benefit to their fellow Class members. Indeed, Plaintiff is preparing to participate in the final fairness hearing as well.

To be sure, $5,000 is reasonable in light of awards in other cases. *See, e.g.*, *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving $10,000.00 incentive award and collecting cases); *see also In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *19 (E.D. Pa. 2004) (approving incentive awards of $25,000.00 to each of five named plaintiffs); *see also In re Residential Doors Antitrust Litig.,* 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000.00 incentive awards to each of four named plaintiffs).

Accordingly, the agreed-upon incentive award is reasonable and should be approved.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court grant this motion and (1) award attorneys' fees and expenses to Class Counsel in the amount of $174,000 and (2) award $5,000 as an incentive award to the Class Representative for her role in representing the class.

Dated: June 14, 2018                    Respectfully submitted,

                                        Nancy Rinehart, *individually and on behalf*
                                        *of all others similarly situated,*

                                        By: s/Patrick H. Peluso
                                        One of Plaintiff's Attorneys

                                        Steven L. Woodrow*
                                        swoodrow@woodrowpeluso.com
                                        Patrick H. Peluso*
                                        ppeluso@woodrowpeluso.com
                                        Woodrow & Peluso, LLC
                                        3900 E. Mexico Ave., Suite 300
                                        Denver, Colorado 80210
                                        Tel: (720) 213-0675
                                        Fax: (303) 928-0809

                                        *admitted pro hac vice*

                                        Stefan Coleman
                                        law@stefancoleman.com
                                        Law Offices of Stefan Coleman, P.A.
                                        1072 Madison Ave, Ste. 1
                                        Lakewood, NJ 08701
                                        Tel: 877-333-9427

30

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on June 14, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of filing to all counsel of record for each party.


<u>s/ Stefan Coleman</u>