# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **NANCY RINEHART**, individually and on behalf of all others similarly situated, | CASE NO. 3:16-CV-05128-MAS-LHG |
| *Plaintiff*, | |
| *v.* | |
| **AS AMERICA, INC.** d/b/a American Standard, a Delaware corporation and **SAFETY TUBS COMPANY, LLC**, a Delaware limited liability company, | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

I.  INTRODUCTION ....................................................................1

II.  TERMS OF THE SETTLEMENT ..............................................3

    A.  Class Definition..................................................................3

    B.  Monetary Relief ................................................................3

    C.  Prospective Relief ............................................................4

    D.  Release of Liability ..........................................................4

III.  THE SETTLEMENT ADMINISTRATOR HAS DISSEMINATED
      THE CLASS NOTICE ..............................................................5

IV.  THE COURT SHOULD GRANT FINAL APPROVAL ..........6

    A.  Standard for Final Approval of a Class Action Settlement ...........6

    B.  The Settlement Satisfies the *Girsh* Factors ......................7

        1.  *The Complexity, Expense, and Likely Duration of the Litigation
            Favor Approval* ........................................................7

        2.  *The Reaction of the Class to the Settlement*.............................10

        3.  *The Stage of the Proceedings and the Amount of Discovery
            Completed* ..............................................................12

        4.  *The Risks of Establishing Liability and Damages Also Support
            Approval of the Settlement* ......................................12

        5.  *The Risks of Maintaining the Class Action Through Trial*.......14

        6.  *The Ability of the Defendant to Withstand
            a Greater Judgment* ................................................16

7.   *The Range of Reasonableness of the Monetary Relief in Light of the Best Possible Recovery and the Attendant Risks of Litigation* ....................................................................16

**V.   CONCLUSION** ............................................................**18**

# TABLE OF AUTHORITIES

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018)......................9

*Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248, Doc. No. 137
 (S.D. Cal., Sept. 28, 2012) ..................................................18

*Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012)...................15

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061
 (N.D. Ill., May 5, 2011).........................................................13

*Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ..............14

*Bell Atl. Corp.* v. *Bolger*, 2 F.3d 1304 (3d Cir. 1993) ...........................10

*Dennis v. Trans Union, LLC*, Civil Action No. 14-2865,
 2014 WL 5325231 (E.D. Pa. Oct. 20, 2014).......................................13

*Dominguez v. Yahoo, Inc.*, 629, Fed. Appx. 369 (3rd Cir.  2015)...........................9

*Ehrheart v. Verizon Wireless*, 609 F.3d 590  (3d Cir. 2010)...................................7

*Estrada v. iYogi, Inc.*, CIV. NO. 2:13-01989 WBS CKD, 2015 WL 5895942
 (E.D. Cal. Oct. 6, 2015).........................................................18

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399
 (N.D. Cal. Apr. 6, 2012).......................................................11

*Forcellati v. Hyland's Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264
 (C.D. Cal. Apr. 9, 2014).......................................................11

*Gascho v. Global Fitness Holdings, LLC Eyeglasses*, Nos. 14-3761, 14-3798,
 2016 WL 2802473 (6th Cir. 2016)...................................................11

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016)......................17

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ..........................................7

*Green v. Serv. Master*, No. 07 C 4705,
    2009 WL 1810769 (N.D. Ill. June 22, 2009) ......................................15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ..................................10, 11

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    370 F. Supp. 2d 320 (D. Me. 2005) ....................................................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)...................................................................6

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) .................................10

*In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No. 08-1432
    (DMC)(JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) ................16

*In re TJX Cos. Retail Sec. Breach Litig.*,
    584 F. Supp. 2d 395 (D. Mass. 2008) ..................................................11

*Rinky Dink v. Elec. Merchant Sys., et al.*, 13-cv-01347, Doc. No. 151
    (W.D. Wash., Apr. 19, 2016) ..............................................................17

*Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*,
    251 F.R.D. 312 (N.D. Ill. 2008).........................................................15

*Soular v. N. Tier Energy LP*, Civil No. 15-CV-556 (SRN/LIB), 2015 WL 5024786
    (D. Minn. Aug. 25, 2015)......................................................................9

*Steinfeld v. Discover Fin. Servs.*, 12-cv-1118, Doc. No. 96 at ¶ 6
    (N.D. Cal. Mar. 10, 2014) ..................................................................18

*Stoetzner* v. *U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ....................................10

*Strong v. BellSouth Telcoms., Inc.,* 173 F.R.D. 167 (W.D. La. 1997) ....................11

*Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011)...............................14

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011)......15

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011)....14

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993)....................14

*Yang Soon Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) ...............................16

## STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES

Fed. R. Civ. P. 23 ....................................................................................................2, 6

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
        27 FCC Rcd. 1830 (Feb. 15, 2012) ......................................................9

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*........................*passim*

47 C.F.R. § 64.1200, *et seq.* ...................................................................................1, 8

Settlement Class Representative Nancy Rinehart ("Plaintiff" or "Rinehart"), by and through Settlement Class Counsel, respectfully submits this Memorandum of Law in Support of her Motion for Final Approval of the Class Action Settlement between Plaintiff and Defendants AS America, Inc. d/b/a American Standard and Safety Tubs Company, LLC (collectively the "Defendants") that received preliminary approval on March 26, 2018.

## I.      INTRODUCTION

Rinehart initiated this lawsuit challenging Defendants' telemarketing activities—specifically, autodialed calls that Defendants placed to advertise their walk-in bathtubs—under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. § 64.1200, *et seq.* (the "TCPA" or the "Act"). Plaintiff alleged that Defendants violated the TCPA in two key ways: (1) first, by using an autodialer to place calls to cellular telephones *en masse* without prior express consent[1], and (2) second, by repeatedly calling telephone numbers registered on the National Do Not Call Registry.

Following the exchange of informal discovery, including the disclosure of data regarding the size and scope of the alleged classes, the Parties engaged in extensive arm's length settlement negotiations overseen by a respected retired

---

[1] Informal discovery exchanged between the Parties identified a website, www.contractorlink.net, that Defendants used to obtain Plaintiff's and the Classes' phone numbers. Plaintiff claimed that the consent language on the website failed to comport with the requirements of 47 C.F.R. § 64.1200, *et seq*.

federal magistrate judge, the Honorable John Hughes (Ret.) of JAMS. The Settlement discussions were hard-fought, adversarial and resolution was by no means certain. Defendants made clear that they would contest and vigorously defend the litigation.

Following two full-day mediation sessions with Magistrate Judge Hughes, as well as post-mediation talks and negotiations, the Parties were ultimately able to reach an agreement in principal on the terms of a demonstrably strong settlement.

The Settlement Agreement ("Settlement" or "Agreement") was presented to the Court and received preliminary approval in accordance with Fed. R. Civ. P. 23(a) and (b)(3) on March 26, 2018. (Dkt. 24.) Pursuant to the Agreement, Defendants are to establish a Settlement Fund totaling six hundred thousand dollars ($600,000.00 USD) from which Settlement Class Members who submit valid claims may elect to receive a cash payment of up to $1,000 or a certificate to be used towards Safety Tubs's products worth up to $2,000.

Following the entry of the Preliminary Approval Order, the Settlement Administrator directed notice to the class. The response has been overwhelmingly positive. There have been 24 timely claim forms submitted, with 6 weeks to go until the September 3, 2018 claims deadline. No objections have been filed with the Court, nor has any class member requested to be excluded.

As such, and as set forth more fully below, class members who file claims

will each receive $1,000 cash payments or $2,000 certificates—an outstanding result for a TCPA class action settlement. Accordingly, Rinehart now moves, for final approval of the Settlement Agreement and respectfully requests that the Court grant Final Approval.

## II.    TERMS OF THE SETTLEMENT

The central terms of the Settlement are as follows:

### A.    Class Definition.

The "Settlement Class" is defined as: all persons in the United States who (1) from a date four years prior to the filing of this Complaint until the date notice is disseminated to the Class, (2) were called by Defendants (or any third-party acting on behalf of Defendants), (3) on the persons' cellular telephones, (4) for the purpose of selling Defendants' products or services, and (5) had their lead information obtained by Defendants via the contractorlink.net website. (Settlement Agreement ¶ 1.7.)

### B.    Monetary Relief.

The Settlement provides Class Members who file claims a choice regarding the type of relief they will receive. Specifically, Defendants have agreed to provide to each Class Member who files a claim either a cash payment in the amount of $1,000 or a certificate for $2,000 worth of Safety Tubs's products—Settlement Class Members need only check a box indicating which type of relief they prefer.

3

Defendants' obligation is capped at $600,000.00 total ("Settlement Fund"). (*Id.* ¶ 2.1.) That is, if the total amount required to pay each approved claim would exceed the amount in the Settlement Fund after payment of settlement administration expenses (which will be $12,507), the court-approved incentive award to Nancy Rinehart for her service as the Class Representative, and any reasonable attorneys' fees awarded to proposed Class Counsel, then each Settlement Class Member with an approved claim will receive a *pro rata* share of the amount of the settlement fund remaining after payment of such amounts. (*Id.*)

### C.   Prospective Relief.

Defendants further agree that they shall affirmatively use commercially reasonable efforts to, on or before the Effective Date and continuing for a period of eighteen (18) months from the Effective Date, procure express written consent from each person they intend to place promotional telephone calls to using an ATDS using language that tracks the TCPA's implementing Regulations. (*Id.* ¶ 2.2.)

### D.   Release of Liability.

In exchange for the relief described above, Defendants and their related and affiliated entities will receive a full release of any claims relating to telephone calls placed to Class Members whose lead information was procured via the contractorlink.net website. (*Id.* ¶¶ 3.1-3.4.)

4

As explained below, such terms are plainly favorable to the Class, and the Court should grant preliminary approval to the instant Agreement.

## III.   THE SETTLEMENT ADMINISTRATOR HAS DISSEMINATED THE CLASS NOTICE.

The notice program approved by the Court has been, and continues to be, implemented by the Parties and the Court-approved Settlement Administrator in accordance with the Settlement Agreement. (*See* Declaration of Jeff Mitchell, Project Manager with Settlement Administrator Analytics Consulting, LLC, a true and accurate copy of which is submitted herewith and attached as Exhibit A.)

On January 16, 2018, the Settlement Administrator received the list of class member telephone data consisting of 384 unique telephone numbers. (Mitchell Decl. ¶ 7.)  From that list, the Settlement Administrator conducted a reverse look-up to verify the names, addresses, and phone numbers—this process updated the mailing addresses for 37 records. (Mitchell Decl. ¶ 8.)  The addresses of the 384 Settlement Class Members were standardized and updated using the National Change of Address database prior to mailing. (*Id*. ¶ 9.)  On April 27, 2018, the Notice and Claim Form was mailed by first class mail to the last known addresses of the 384 Class Members. (*Id*. ¶ 10.) As a result of the Notice Packet mailing, 66 Notice Packets were returned as undeliverable. (*Id*. ¶ 12.) The Settlement Administrator ran skip traces for those Class Members whose Packets were returned undeliverable in a further attempt to locate these individuals—this process

5

located updated addresses for 8 Class Members and the Packets were re-mailed. (*Id.*) As such, in total, of the 384 cellular telephone owners and addresses identified in the class data, the Settlement Administrator successfully mailed or re-mailed notice to 326 class members, an 84.9% success rate.

Also, on April 27, 2018, the Settlement Administrator established the settlement website, ASAmericaTCPASettlement.com. (*Id.* ¶ 11.) The Website includes general information about the Settlement including information about the legal rights and options of Settlement Class Members and associated deadlines and a claim portal. (*Id.* ¶ 11.)

The claims deadline is September 3, 2018, and to date the Settlement Administrator has received 24 timely submitted claim forms from the 326 Class Members the Settlement Administrator was able to mail or re-mail Packets. (*Id.* ¶ 14.) This equates to a current claims rate of 7.36%, with nearly 6 weeks remaining in the claims period.

Moreover, there has been no requests to opt-out or to be excluded.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL

### A.   Standard for Final Approval of a Class Action Settlement

The decision whether to approve a class action settlement under Rule 23(e) is a matter of judicial discretion. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (*quoting Girsh v. Jepson*, 521

F.2d 153, 156 (3d Cir. 1975)). There is a strong presumption in favor of settlements in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (citation omitted).

In evaluating a proposed class settlement, the Third Circuit requires that courts consider the following factors ("*Girsh* Factors"): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Applied here, the *Girsh* Factors plainly weigh in favor of approval of the Settlement.

**B.    The Settlement Satisfies the *Girsh* Factors**

      *1.    The Complexity, Expense, and Likely Duration of the Litigation Favor Approval.*

Rinehart believes that her claims against Defendants have merit and that she could have obtained a judgment if the case were to have proceeded to trial. Yet it is apparent that Rinehart and the Class would still face a number of difficult

challenges if the litigation were to continue.

Several of these challenges are grounded in the Parties' competing interpretations of what constitutes "prior express consent" under the TCPA, how prior express consent was supposedly obtained here, and the type of consent (written or oral) that was required under the circumstances.

Defendants acquired class members' telephone numbers from submissions on a website known as contractorlink.net. The website allowed consumers to submit their contact information to receive calls about Defendants' products. Rinehart alleges that the website through which Defendants' obtained the telephone numbers did not have the written disclosures pertaining to automated calls as required by the TCPA and the Federal Communication Commission ("FCC"). That is, in 2012, the FCC issued a rule requiring businesses to obtain prior express written consent before placing telemarketing calls. 47 C.F.R. § 64.1200 (a)(3). Under the regulation, "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

*Id.* at § 64.1200(f)(8). The FCC explained that "[o]nce our written consent rules become effective . . . an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls,

and thus could be liable for making such calls absent prior written consent." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1857 ¶ 68 (Feb. 15, 2012). This 2012 FCC Order took effect on October 16, 2013. *See Soular v. N. Tier Energy LP*, Civil No. 15-CV-556 (SRN/LIB), 2015 WL 5024786, at *7 (D. Minn. Aug. 25, 2015). Defendants contest this argument and insist that its website disclosures met all FCC requirements.

Plaintiff also alleged that the calls were placed using an automatic telephone dialing system ("ATDS"), another point Defendants dispute. Whether the software and hardware used to make these messages qualify as ATDS is a complex question of fact and law, the resolution of which carries uncertainties for both sides. *See, e.g., Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 373 (3rd Cir. 2015) ("[R]emand is appropriate to allow that Court to address more fully in the first instance whether Yahoo's dialing equipment meets the statutory definition [of ATDS]"); *see also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).

Absent a settlement, these questions would be left to the Court and the trier of fact. Appeal(s) to the Third Circuit following unfavorable rulings would be likely. While Plaintiff believes that the facts and law are squarely on her side, success is far from certain and relief to the Settlement Class, absent this settlement,

was not guaranteed. Thus, resolution of this case without the instant Settlement would be a complex and expensive endeavor likely lasting years, favoring approval.

2.      *The Reaction of the Class to the Settlement*

The reaction of the Settlement Class has been positive. No Class Member requested to be excluded and no objections were filed. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 234-35 (3d Cir. 2001) (affirming district court's conclusion that the class' reaction was "extremely favorable" where 478,000 notices were sent, 4 objections were made, and 234 class members opted out); *see also Stoetzner* v. *U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that "only" 29 objections in 281 member class "strongly favors settlement"); *see also Bell Atl. Corp.* v. *Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. . . . This small proportion of objectors does not favor derailing settlement."); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (fact that only two class members objected out of 300,000 weighed in favor of requested fee award).

The lack of opt-outs and objections stands in stark contrast to the number of claims filed. As noted above, the Claims Administrator has received 24 claims as of the date of the filing of this Motion. Each of these claims represents an affirmative vote in favor of the Settlement. When considered against the total

number of notices sent, the claims rate in this case (currently 7.36% with approximately 6 weeks to go until the September 3, 2018 claims deadline) is above the rates seen in typical consumer class action settlements. *See In re TJX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 397, 406 (D. Mass. 2008) (approving settlement with response rate of slightly more than 3%); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 321 (D. Me. 2005) (noting prior approval of settlement with 2% claim rate); *see also Strong v. BellSouth Telcoms., Inc.,* 173 F.R.D. 167, 169, 172 (W.D. La. 1997) (4.3% claim rate); *see also Forcellati v. Hyland's Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (same); *see also Gascho v. Global Fitness Holdings, LLC Eyeglasses*, Nos. 14-3761, 14-3798, 2016 WL 2802473, at *18 (6th Cir. 2016) (an 8% response rate ""was well within the acceptable range for a consumer class action.").

Hence, the number of claims filed—especially when compared to the lack of opt-outs and objections—supports approval of the Settlement. *See In re Cendant Corp. Litig.*, 264 F.3d at 234-35 (class reaction favored approval where "the number of objectors was quite small in light of the number of notices sent and

claims filed").

3. *The Stage of the Proceedings and the Amount of Discovery Completed*

The third *Girsh* factor—which analyzes the stage of the proceedings and the amount of discovery completed—also favors granting final approval here. While the parties were able to reach a settlement without undue delay, the matter was ripe for Settlement. That is, all parties sought, and disclosed, ample evidence (related to merits, class issues, and damages) in informal discovery and through the mediation process so as to allow Settlement Class Counsel to make an informed decision during the negotiations.

The settlement discussions were adversarial, arm's-length and conducted before a retired and respected jurist. It is Class Counsel's professional judgment, based on the size of the class, the risks in establishing liability and maintaining the action as a class action, that Settlement now, at this stage, is the best option for the Settlement Class. No amount of additional discovery or litigation would produce more in recovery to the Settlement Class.

4. *The Risks of Establishing Liability and Damages Also Support Approval of the Settlement*

The fourth and fifth *Girsh* Factors—the risks of establishing liability and damages— further demonstrate the fairness and reasonableness of the Settlement. As noted in the discussion of the first *Girsh* factor, although Rinehart believes her

claims are factually and legally strong, she would have faced significant risks in litigating the claims as Defendants had several potentially persuasive legal defenses. This is further buoyed by the decision in *ACA Int'l v. FCC*, which arguably altered the legal landscape of the TCPA by making it more difficult to prove an ATDS was used. By entering into the Settlement now, Plaintiff and Settlement Class Members have hedged against these risks and locked in significant benefits.

Additionally, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process or other constitutional grounds. *See, e.g.*, *Dennis v. Trans Union, LLC*, Civil Action No. 14-2865, 2014 WL 5325231, at *8 n.7 (E.D. Pa. Oct. 20, 2014) (noting, but not deciding, a due process challenge to statutory damages which could result in, according to the defendant, "crushing liability"); *see also Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case— between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). As such, Plaintiff could win only to have her award significantly reduced.

Finally, there is a risk of losing a jury trial and/or an appeal. The Settlement accounts for these risks and provides substantial relief to Class Members without delay.

5.    *The Risks of Maintaining the Class Action Through Trial*

In addition to these risks on the merits, class certification was not guaranteed either. Although this Court certified a class for settlement purposes, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *see also Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*). Thus, merely because a settlement class has been certified does not necessarily mean that a class would be certified following adversarial briefing.

Indeed, class certification is not automatic in TCPA cases. *Compare, e.g.*, *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the

[defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv. Master*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted), *and Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients . . . reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue" (internal citations omitted)), *and Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

If the Court were to reject certification in this case, there would be no relief for any class member except for Rinehart, regardless of the merits of the underlying claims. Because of this (admittedly minimal) risk—and because this action was never certified as a class action for litigation purposes—this *Girsh*

Factor also favors approval of the Settlement.

> 6.    *The Ability of the Defendant to Withstand a Greater Judgment*

Defendants are of substantial size and, given the relatively small size of the

Class at issue, would have the ability to withstand a judgment. Importantly here,

however, the amount available to Class Members—$1,000 cash or a $2,000

certificate—is actually more than the $500 statutory award available for a TCPA

violation in cases where willfulness is not shown (a tough barrier in any case). And

the ability to withstand a greater judgment is not a sufficient basis (by itself) to

deny settlement approval in any case. *See Yang Soon Oh v. AT&T Corp.*, 225

F.R.D. 142, 150-51 (D.N.J. 2004); *In re Schering-Plough Corp. Enhance ERISA

Litig.*, Civil Action No. 08-1432 (DMC)(JAD), 2012 WL 1964451, at *5 (D.N.J.

May 31, 2012). As a practical matter, Defendants were not willing or able to pay

more to settle the case, would have paid nothing if it prevailed, and the results

obtained here are likely higher than what each Class Member would have received

at trial. This factor weighs in favor of final approval.

> 7.    *The Range of Reasonableness of the Monetary Relief in Light of
> the Best Possible Recovery and the Attendant Risks of
> Litigation*

The final *Girsh* Factors (the range of reasonableness of the monetary relief

in light of the best possible recovery and all the attendant risks of litigation) also

support approval of the Settlement.

Under the Settlement, every Class Member who submitted a timely and valid claim will receive a *pro rata* share of the net Settlement Fund ($600,000) not to exceed $1,000 for cash claimants or $2,000 for certificate claimants. Given the number of claims filed and the circumstances of the claimants, each class member will receive the full amount of their claim, either $1,000 cash or a $2,000 certificate.

This amount exceeds the $500 per call allowable under the TCPA in cases where willfulness has not been established. Full relief is neither a prerequisite to class settlement approval nor is it realistic. As one court recently noted "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to plaintiffs, for the essence of settlement is compromise." Here, as in *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016), Class Members receive "a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Defendants'], for its part, buys peace and mitigates risk." *Id.*

Further, the amounts recovered are undoubtedly reasonable, fair, adequate, and consistent with other TCPA settlements: *See, e.g.*, *Gehrich*, *supra*; *see also Rinky Dink v. Elec. Merchant Sys., et al.*, 13-cv-01347, Doc. No. 151 (W.D. Wash. Apr. 19, 2016) (approving awards in a TCPA action of approximately $97 per class

17

member); *see also Estrada v. iYogi, Inc.*, CIV. NO. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *see also Steinfeld v. Discover Fin. Servs.*, 12-cv-1118, Doc. No. 96 at ¶ 6 (N.D. Cal., Mar. 10, 2014) (claimants received $46.98 each); *see also Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248, Doc. No. 137 (S.D. Cal., Sept. 28, 2012) (claimants received $40 each). As such, the Settlement provides monetary benefits that greatly exceed other TCPA class action settlements in addition to meaningful non-monetary relief.

## V.     CONCLUSION

For the reasons set forth above, Rinehart respectfully requests that the Court grant final approval of the Settlement Agreement.


Dated: July 20, 2018                    Respectfully submitted,

                                        Nancy Rinehart, *individually and on behalf of all others similarly situated,*

                                        By: s/Patrick H. Peluso_____
                                        One of Plaintiff's Attorneys

                                        Steven L. Woodrow*
                                        swoodrow@woodrowpeluso.com
                                        Patrick H. Peluso*
                                        ppeluso@woodrowpeluso.com
                                        Woodrow & Peluso, LLC
                                        3900 E. Mexico Ave., Suite 300

Denver, Colorado 80210
Tel: (720) 213-0675
Fax: (303) 928-0809

*admitted pro hac vice*

Stefan Coleman
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
1072 Madison Ave, Ste. 1
Lakewood, NJ 08701
Tel: 877-333-9427

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on July 20, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of filing to all counsel of record for each party.


<u>s/ Stefan Coleman</u>